UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| LISA MICHELE HOGUE, ) | |
| ) | |
| Plaintiff, ) | Civil No. 5:20-cv-00136-GFVT |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| COMMISSIONER OF SOCIAL ) | **ORDER** |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Lisa Hogue seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied her claim for Title II disability and disability insurance benefits. Ms. Hogue brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering her claim. The Court, having reviewed the record and for the reasons set forth herein, will DENY Ms. Hogue's Motion for Summary Judgment and GRANT the Commissioner's.

**I**

**A**

Plaintiff Lisa Hogue initially filed an application for Disability Insurance Benefits (DIB) on August 23, 2016, alleging disability beginning August 19, 2016. [Transcript (hereinafter, "Tr.") 165–71.] Her claim was denied on December 12, 2016, and then again on March 27, 2017. [Tr. 102–05, 111–17.] Ms. Hogue filed a request for a hearing on April 19, 2017, and on October 24, 2018, Administrative Law Judge (ALJ) Boyce Crocker held a hearing. [Tr. 32–66, 118–20.] On January 15, 2019, ALJ Crocker rendered a decision concluding that Ms. Hogue

was not disabled. [Tr. 15–25.] On February 4, 2020, the Appeals Council denied Ms. Hogue's request for review, making the January 15, 2019, ALJ decision final. [Tr. 1–6.]; 20 C.F.R. § 422.210(a).

To evaluate a claim of disability for Title II disability insurance benefit claims, an ALJ conducts a five-step analysis. 20 C.F.R. § 404.1520. First, if a claimant is performing a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, she does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is "disabled." C.F.R. § 404.1530(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of her past relevant work, and if a claimant's impairments do not prevent her from doing past relevant work, she is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work experience) prevent her from doing other work that exists in the national economy, then she is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from

was not disabled. [Tr. 15–25.] On February 4, 2020, the Appeals Council denied Ms. Hogue's request for review, making the January 15, 2019, ALJ decision final. [Tr. 1–6.]; 20 C.F.R. § 422.210(a).

To evaluate a claim of disability for Title II disability insurance benefit claims, an ALJ conducts a five-step analysis. 20 C.F.R. § 404.1520. First, if a claimant is performing a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, she does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is "disabled." C.F.R. § 404.1530(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of her past relevant work, and if a claimant's impairments do not prevent her from doing past relevant work, she is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work experience) prevent her from doing other work that exists in the national economy, then she is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from

performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving her lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At step one, the ALJ found Ms. Hogue had not engaged in substantial gainful activity since the alleged onset date, August 19, 2016. [Tr. 17.] At step two, the ALJ found Ms. Hogue to suffer from the following severe impairments: "obesity; diabetes; history of right knee pain s/p surgery; depression; anxiety; fibromyalgia; irritable bowel syndrome (IBS); trigger finger left middle and right middle; [and] degenerative disc disease of the lumbar spine." [Tr. 17.] At step three, the ALJ determined that Ms. Hogue's combination of impairments did not meet or medically equal one of the listed impairments in C.F.R. Part 404 or Part 416. [Tr. 18.] Before moving on to step four, the ALJ considered the record and determined that Ms. Hogue possessed the following residual functioning capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). Specifically, claimant can lift or carry and push or pull 20 pounds occasionally and 10 pounds frequently; claimant can stand/walk 4 hours out of an 8 hour day; operation of foot controls and pushing/pulling with right lower extremity limited to frequent; can occasionally climb ramps and stairs, not climb ladders, ropes or scaffolds; can occasionally stoop, kneel, and crouch but never crawl; avoid concentrated exposure to vibration, unprotected heights and moving machinery; handling limited to frequently bilaterally; can understand and remember routine detailed tasks that require some skills but do not require complex duties; can sustain attention and effort on detailed tasks that require some skills but do not require complex duties for extended periods of two hour segments; can relate adequately in settings with only occasional contact with the general public and can interact with coworkers and supervisors for task completion; can adapt to expected, predictable, routine task demands.

[Tr. 20.] After explaining the RFC, the ALJ found at step four that Ms. Hogue is not capable of performing past relevant work as printer operator, order filler, medical billing clerk, or hospital clerk. [Tr. 24.] At step five, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." [Tr. 24.] Accordingly, the ALJ determined at step five that Ms. Hogue was not disabled since August 19, 2016. [Tr. 25.] Ms. Hogue filed this action for review on March 31, 2020. [R. 1.]

B

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319–20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high…It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citations omitted). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.  *See Ulman*, 693 F.3d at 714 (citing *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## II

Ms. Hogue presents two arguments to this Court as grounds for relief from the ALJ's unfavorable decision.  Specifically, she argues (1) "[t]he ALJ failed to give appropriate weight and good reasons for the weight given to the medical opinion of the consultative examiner and the treating mental health provider," and (2) "[t]he ALJ also failed to consider at least two (2) of [Ms.] Hogue's severe impairments that would further reduce her Residual Functional Capacity and support a finding that she is unable to perform substantial gainful activity and is therefore disabled."  [R. 11-1 at 8.]  For the reasons set forth below, Ms. Hogue's arguments do not warrant reversal of the ALJ's determination.

### A

Ms. Hogue first contends that the ALJ should have given more weight to the opinions of Jennifer Fishkoff, Psy.D., a consultative examiner, and Teresa Coffman, Ms. Hogue's treating mental health provider.  [R. 11-1 at 8–10.]  Dr. Fishkoff evaluated Ms. Hogue on November 4, 2016.  [Tr. 325.]  Following her examination, Dr. Fishkoff provided the following opinions as to Ms. Hogue:

- she presents with average intellect;
- she suffers from numerous medical problems, including depression and pain, that impact her emotionally;
- she has a poor ability to tolerate frustration, maintain employment, and conform to social standards;
- she has the ability to manage funds;
- she is moderately to severely impaired in her ability to understand, retain, and follow instructions as an eight-hour workday would require;
- she is moderately to severely impaired in her ability to sustain attention to perform simple and repetitive tasks, and she has been fired from several jobs previously;
- she denied a history of interpersonal conflicts; and
- she does not appear to have the capability to tolerate the pressures and stress of day-to-day employment.

[Tr. 332.]  Teresa Coffman, Ms. Hogue's treating mental health provider, subsequently agreed with Dr. Fishkoff's opinions based upon her own treatment of Ms. Hogue.  [Tr. 801.]  Ms. Coffman opined that she previously diagnosed Ms. Hogue with major depressive disorder and that Ms. Hogue's depression and depressive symptoms "would make it difficult for her to maintain employment."  [Tr. 802.]

The ALJ reviewed Dr. Fishkoff and Ms. Coffman's opinions and accorded them both "some weight."  [Tr. 23.]  While the ALJ noted that Dr. Fishkoff "correctly diagnose[d] the claimant with depression and notes that claimant would have limitations in following instructions and sustaining attention," the ALJ took issue with the severity of the limitations Dr. Fishkoff found in light of Ms. Hogue's medical record.  [Tr. 23.]  The ALJ noted Dr. Fishkoff's findings were internally inconsistent given that she found Ms. Hogue's "thoughts and speech were sequential, goal-directed, clear and coherent" and her "thought content was unremarkable and her affect was appropriate."  [Tr. 23.]  The ALJ also expressed concern that Dr. Fishkoff relied "too much on [Ms. Hogue's] own reporting."  [Tr. 23.]  The ALJ also only gave Ms. Coffman's opinions some weight because "she relies heavily on Dr. Fishkoff's report and her opinion retains the same flaws."  [Tr. 23.]  Ms. Hogue argues that the medical record does not support the

6

ALJ's opinion and that the ALJ's statement that Dr. Fishkoff and Ms. Coffman's opinions relied too much on Ms. Hogue's own reporting is "baseless." [R. 11-1 at 10.]

The Court finds that the ALJ's determination of the level of weight accorded to the opinions of Dr. Fishkoff and Ms. Coffman is supported by substantial evidence. Dr. Fishkoff was a consultative examiner who only saw Ms. Hogue once, and an ALJ is entitled to give less weight to a consultative examiner's opinion. *Andres v. Comm'r of Soc. Sec.*, 733 F. App'x 241, 245 (6th Cir. 2018). The ALJ articulated three reasons for giving Dr. Fishkoff's opinions less weight: (1) her opinions did not correspond to the medical evidence in the record; (2) her opinions were internally inconsistent; and (3) she relied too heavily on Ms. Hogue's own subjective reporting. [Tr. 23.] After review, the ALJ found that the medical record indicated that Ms. Hogue was cooperative and appropriate, generally showed improvement in her level of depression, was well-groomed, had normal speech and good eye contact, did not have suicidal or homicidal ideations, had attention and concentration within normal limits, continued to go on annual vacations, had a euthymic mood and was interactive. [Tr. 22 (citing to the record).]

In addition, the ALJ took issue with Dr. Fishkoff's finding that Ms. Hogue did not have the capability to hold a job and was moderately to severely impaired in her ability to understand, retain, and follow instructions given that she had also found Ms. Hogue's thoughts and speech to be clear and coherent, her thought content unremarkable, and her affect appropriate. [Tr. 23.] As for the ALJ's opinion that Dr. Fishkoff relied too heavily on Ms. Hogue's own subjective reporting, Dr. Fishkoff's report is filled with subjective statements Ms. Hogue made during the evaluation. [Tr. 325–32.] An ALJ may give an opinion little weight if it relies too heavily on the claimant's own subjective complaints. *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 467 (6th Cir. 2017) (finding an ALJ's determination that "a medical opinion relied too heavily on the

7

claimant's subjective complaints" to be an adequate basis "to support an ALJ's decision to give little weight to the opinion") (citing *Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013)).

The amount of weight given to Ms. Coffman's opinion is also supported by substantial evidence. Although Ms. Coffman is a licensed professional clinical counselor and is Ms. Hogue's treating mental health counsellor, a professional health counselor is not an acceptable medical source. *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("The agency's regulations limit treating sources to 'acceptable medical sources,' the definition of which does not include mental health counselors.") (citing 20 C.F.R. § 404.1502 & 1513(a)); *see also Duff v. Comm'r of Soc. Sec.*, 2015 WL 2250396, at *3 (N.D. Ohio May 13, 2015) (finding clinical counselor not an acceptable medical source). While an ALJ "may use evidence from non-acceptable medical sources," such as opinions from registered nurses or clinical counselors, the ALJ is not required to articulate "good reasons" as to the weight assigned to those opinions. *Duff*, 2015 WL 2250396, at *3.; *see also Brenneman v. Comm'r of Soc. Sec.*, 2021 WL 1176699, at *3 n.3 (N.D. Ohio Mar. 29, 2021). When evaluating opinions from not acceptable medical sources or nonmedical sources, an ALJ should generally "explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicators reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 416.927(f)(2).

Here, the ALJ articulated that Ms. Coffman is not "an acceptable medical source" because she is a licensed professional clinical counselor, and she opined that she gave Ms. Coffman's opinion little weight because she "relies heavily on Dr. Fishkoff's report and her opinion retains the same flaws." [Tr. 23.] While the ALJ's discussion of Ms. Coffman's

8

opinions was brief and could have benefitted from more robust analysis, the Court finds the ALJ's consideration to be sufficient, particularly given the reasons the ALJ previously articulated for giving Dr. Fishkoff's opinions little weight. It is the ALJ's responsibility to weigh the evidence in the record. *Ulman*, 693 F.3d at 714. Here, substantial evidence supports the ALJ's opinion as to the weight she provided Dr. Fishkoff and Ms. Coffman's opinions, and the Court will defer to the ALJ's holding.

**B**

Ms. Hogue next argues that the ALJ ignored Ms. Hogue's neuropathy and cervical spine degeneration "in formulating his erroneous Residual Functional Capacity (RFC)." [R. 11-1 at 11.] Ms. Hogue argues that these medical impairments were documented throughout her medical records, and it is "reversible error for the ALJ to fail to identify and consider these impairments." *Id.* at 12. The Commissioner argues that the ALJ reasonably considered Ms. Hogue's neck condition and neuropathy at step two of his opinion. [R. 13 at 8.] The ALJ has a responsibility to address the claimant's reported symptoms. *See* 20 C.F.R. § 404.1529.

Ms. Hogue is correct that neither neuropathy nor cervical spine degeneration are explicitly mentioned by the ALJ at step two of his opinion. However, "the fact that some of a claimant's diagnosed impairments may have gone unmentioned at the step two severity determination is legally irrelevant." *Negron v. Berryhill*, 2017 WL 2546336, at *11 (M.D. Tenn. June 13, 2017) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). Put another way, "when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two "[does] not constitute reversible error." *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

9

Here, the ALJ included diabetes in his Step Two findings, and it is undisputed that neuropathy is a complication of diabetes. *See Wilmore v. Comm'r of Soc. Sec.*, 2016 WL 8671217, at *4 (E.D. Mich. Dec. 9, 2016) (rejecting argument that ALJ "erred by omitting diabetic neuropathy of the lower extremities from the Step Two" analysis because ALJ included diabetes mellitus as a severe impairment at Step Two). Furthermore, at Step Three, the ALJ "considered and evaluated the claimant's limitations caused by diabetes mellitus under listing 9.00 of Appendix I and [found] that the claimant does not meet or equal the listing." [Tr. 18.] While discussing Ms. Hogue's residual functional capacity, the ALJ looked to the record to find that the consultative examiner "found no obvious diabetic complications except diminished sensation in the lower legs and feet to fine touch." [Tr. 22.]

Ms. Hogue's argument that the ALJ "ignored at least twenty (20) diagnoses of uncontrolled diabetes with complications" is unpersuasive. [R. 11-1 at 11.] Rather than ignoring Ms. Hogue's diabetes and complications, the ALJ looked to the medical record and noted that although Ms. Hogue had a "history of uncontrolled Type II diabetes…more recently, [her] A1c and glucose have become reasonably managed through medication and through more attention to compliance and diet." [Tr. 22.] Substantial evidence supports the ALJ's conclusion that Ms. Hogue's diabetes has become more reasonably managed. [*See, e.g.*, Tr. 661, 775, 828.] Because the ALJ considered Ms. Hogue's diabetes and complications from it, which includes neuropathy, Ms. Hogue's argument fails.

Although a closer question, Ms. Hogue's cervical spine argument also fails. At the hearing, Ms. Hogue testified that it felt like she had "a strain in [her] neck all the time." [Tr. 56.] Ms. Hogue added that it was like having "a crick in [her] neck." [Tr. 56.] On February 14, 2017, an x-ray of Ms. Hogue's cervical spine revealed "[d]isc space narrowing most pronounced

10

at C5-C6 and C6-C7" and "[m]oderate osteophytosis at C3-C4 and C4-C5" in addition to "[f]acet hypertrophy and uncovertebral spurring with mid neuroforaminal narrowing at multiple levels." [Tr. 418.]  The impression was "[d]egenerative changes without acute fracture or malalignment." [Tr. 418.]  However, the x-ray also revealed "no acute fractures or malalignment," well-aligned cervical vertebrae, and "no prevetebral soft tissue swelling." [Tr. 418.]

Although the ALJ failed to explicitly evaluate Ms. Hogue's alleged neck issues, the Court finds this to be harmless error because (1) the ALJ generally addressed the issue through his review of the medical record as a whole; (2) the ALJ relied on experts who explicitly opined on Ms. Hogue's alleged neck issues; and (3) Ms. Hogue failed to show how her neck issues negatively affected her ability to complete light work.  First, the ALJ considered the entire record and determined that Ms. Hogue's self-reported symptoms, which includes her neck symptoms, were not consistent with the evidence in the record. [Tr. 21.]  The record demonstrated that Ms. Hogue had a full range of motion and normal neck curvature. [Tr. 318, 375, 742, 775, 792.]  Even her x-ray indicated that her cervical vertebrae were well aligned, and she had "no acute fractures or malalignment." [Tr. 418.]

Second, no medical provider or examiner who evaluated Ms. Hogue indicated that she had any concerning neck issues, particularly issues that might affect her ability to perform light work.  To the contrary, on October 26, 2016, consultative examiner Dr. Scott Hamann opined that Ms. Hogue "was able to flex, extend, and rotate her neck through a full range of motion." [Tr. 318.]  Furthermore, state agency consultant Dr. Robert Culbertson reviewed Ms. Hogue's neck x-ray from February 14, 2017, and still opined that Ms. Hogue had abilities in the light work range. [Tr. 96.]  The ALJ reviewed and assigned great weight to the opinions of Dr. Hamann and Dr. Culbertson in forming her RFC, both of whom specifically addressed Ms.

11

Hogue's cervical spine in forming their opinions. [Tr. 23]; *cf. Coldiron v. Com'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (finding ALJ who failed "to make specific mention of obesity" but who credited an expert's report that considered obesity" sufficiently accounted for the plaintiff's obesity in assigning an RFC).

Third, the medical record simply does not reflect that Ms. Hogue's degenerative changes, self-described as neck strain, would prevent her from performing light work with the additional limitations imposed in the residual functional capacity. *See Fresquez v. Comm'r of Soc. Sec.*, 2019 WL 1440344, at *1 (S.D. Ohio Mar. 31, 2019) (finding failure by ALJ to list Plaintiff's Chronic Fatigue Syndrome as an impairment to be harmless error because plaintiff "failed to both identify any functional limitations attributable to her [Chronic Fatigue Syndrome] that the ALJ failed to consider and to challenge the ALJ's adverse credibility determination"); *see also Rouse v. Comm'r of Soc. Sec.*, 2017 WL 1102684, at *2 (S.D. Ohio Mar. 24, 2017) ("Despite it being better practice [for an] ALJ to say explicitly which impairments are found to be non-severe and which are found not to be medically determinable, [the plaintiff] was nevertheless unable to show how any of the impairments the ALJ did not list as severe negatively affected her functioning or ability to complete the work listed in her [residual functional capacity]."). Therefore, Ms. Hogue's cervical spine argument also fails.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff Lisa Hogue's Motion for Summary Judgment [**R. 11**] is **DENIED**, and the Commissioner's Motion for Summary Judgment [**R. 13**] is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 16th day of March, 2022.



Gregory F. Van Tatenhove
United States District Judge

13